**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay Kentera and Julie Kentera, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Fremont Investment and Loan, nka Fremont Reorganizing Corporation, a California Corporation, et al.,<br><br>    Defendants. | No. CV-10-8259-PHX-GMS<br><br>**ORDER** |

    Pending before this Court is a Motion to Dismiss filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen"); Barclays Capital Real Estate, Inc. dba HomEq Servicing ("HomEq"); Wells Fargo Bank, National Association, as Trustee ("Wells Fargo"); and Mortgage Electronic Registration Systems, Inc. ("MERS") (Doc. 38). For the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

    Plaintiffs Jay and Julie Kentera purchased a property located at 3280 Blazing Star Road in Show Low, Arizona, on January 26, 2006 ("the property"). (Doc. 36 ¶ 12). To buy the property, Plaintiffs borrowed $461,000.00 from Fremont Investment & Loan, nka

Fremont Reorganizing Corporation ("Fremont") pursuant to a Promissory Note.[1] (*Id.*). The Note states that "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Doc. 36-1, Ex. A). The Note grants certain powers to the Note Holder, including the power to demand accelerated payment in the event of default. (*Id.*). The loan was secured by a Deed of Trust ("DOT"), which lists Fremont as the Lender, First American Title Insurance Company ("First American") as the Trustee, and MERS as the beneficiary. (Doc. 36-1, Ex. B).[2]

In August of 2006, Securitized Asset Backed Receivables LLC ("Securitized") issued certificates pursuant to a Pooling and Servicing Agreement ("PSA") between Securitized, Fremont, and others. (Doc. 36 ¶ 20). The certificates had an aggregate initial capitalization of $946,617,000.00, and were initially sold to Barclays Capital Inc. ("Barclays"), and Wells Fargo served as the Trustee. (*Id.*). According to the Amended Complaint, during this transaction Plaintiffs' loan was sold to Barclays, and the transaction was subject to the PSA. (Doc. 36 ¶¶ 22–23). The PSA affirms that parties transferring loans have "delivered or caused to be delivered to the Trustee . . . the original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsements from the originator to the last endorsee, endorsed '*Pay to the order of _____, without recourse*' and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer." (Doc. 36, Ex. C). Plaintiffs allege that their mortgage was pooled with others in the PSA and included

---

[1] Plaintiffs have attached a copy of what they allege is an incomplete copy of the Note to their Amended Complaint. Although the Court notes Plaintiffs' contention that the copy may be incomplete, it is "material which is properly submitted as part of the complaint" and therefore may be considered in this Order. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Fremont is not named as a defendant in the amended complaint.

[2] The copy of the Deed of Trust submitted with the First Amended Complaint is a printout from the Navajo County Recorder's Office and labeled "Unofficial Document." Nevertheless, neither party contests that the image represents the terms of the actual Deed of Trust.

- 2 -

1    in the mortgage-backed security underwritten by Barclays.

2    Barclays, doing business as HomEq, was the servicer on Plaintiffs' loan in 2009, when
3    Plaintiffs contacted HomEq to request a loan modification. According to the complaint,
4    HomEq stated that Plaintiffs could not be considered for a modification because they were
5    current on their loan and HomEq had a policy of only modifying loans in default. (Doc. 36
6    ¶ 38). HomEq then allegedly encouraged Plaintiffs to default on their loan, which Plaintiffs
7    did. (*Id.*). HomEq subsequently supplied Plaintiffs with loan modification applications
8    through a program which approved modifications for primary residences, and since the
9    property was not Plaintiffs' primary residence, they were rejected. (Doc. 36 ¶ 40). Plaintiffs
10   provided additional information to HomEq on August 18, but HomEq initiated foreclosure
11   proceedings on August 25, 2009. (Doc. 36 ¶¶ 54, 41).

12   An Assignment of Trustee from HomEq to Wells Fargo was recorded on August 25.
13   (Doc. 36-2, Ex. D). Also on August 25, a Substitution of Trustee was recorded with Navajo
14   County, substituting Old Republic Default Management Services ("Old Republic") for Wells
15   Fargo; this substitution was dated on August 3, 2009, and executed by HomEq, purportedly
16   acting as attorney in fact for Wells Fargo. (Doc. 36-2, Ex. F). On August 25, 2009, Old
17   Republic noticed a trustee sale for November 30, 2009 at 2:00 P.M. (Doc. 36-2, Ex. G).

18   Plaintiffs continued to work with HomEq on the situation, and the parties agreed to
19   a Listing Forbearance Agreement ("LFA") on November 5, 2009, through which the
20   foreclosure proceedings were postponed while the property was listed for sale. (Doc. 36 ¶
21   63). Plaintiffs continued to make loan payments under the agreement. (Doc. 36 ¶ 65). The
22   parties entered into a second LFA covering the period from March 26, 2010 through
23   September 30, 2010, which required Plaintiffs to continue to make payments and set a lower
24   listing price for the property. (Doc. 36 ¶ 67).

25   On August 11, 2010, Plaintiffs were notified that the servicing of the loan would be
26   transferred from HomEq to Ocwen on August 31, 2010. (Doc. 36, ¶ 69). Plaintiffs made their
27   August payment, and mailed the September payment. (Doc. 36 ¶¶ 70–71). On October 6, an

28

- 3 -

1 Ocwen representative called Plaintiffs and discussed Ocwen's loan modification program.
2 (Doc. 36 ¶ 72). Plaintiffs engaged in a series of phone conversations with Ocwen
3 representatives during the month of October regarding modification. On October 28, they
4 were contacted by an Ocwen representative about paperwork regarding a pending
5 modification application. During the phone conversation, the Ocwen representative checked
6 on the status of the property and noticed that the foreclosure sale had taken place the day
7 before, on October 27. (Doc. 36 ¶ 76). Plaintiffs called Ocwen throughout the day, learning
8 at one point that their required September payment had been changed from $3,898.10, the
9 amount they had sent, to $3,898.11. (Doc. 36 ¶ 79). They received a letter on November 6,
10 2010 that was dated October 22, 2010, stating that their $3,898.10 payment was insufficient
11 to bring the loan current and that it was being rejected. (Doc. 36 ¶ 82).

12 Plaintiffs continued to contact Ocwen in an effort to rescind the foreclosure, but
13 Ocwen representatives were either not able or not willing to comply, stating instead that
14 Plaintiffs would have to purchase the property back. (Doc. 36 ¶¶ 88–92). Plaintiffs filed their
15 initial complaint in the Navajo County Superior Court on December 6, 2010, and Defendants
16 removed to federal court on December 30. (Doc. 1).

17 On September 8, 2011, the Court dismissed a number of allegations against MERS
18 and HomEq in the original complaint, including claims for declaratory relief, quiet title
19 claims based upon the theory that a deed of trust is void if a note and beneficiary are not the
20 same party and related theories, claims of the breach of covenant of good faith and fair
21 dealing, a claim of negligent performance of an undertaking, and fraud claims. (Doc. 33). A
22 claim of quiet title against Wells Fargo survived, along with claims for the breach of the
23 covenant of good faith and fair dealing, negligent performance of an undertaking, and fraud
24 against Wells Fargo and Ocwen. (Doc. 33). Plaintiffs filed an Amended Complaint on
25 October 7, 2011. (Doc. 36). Plaintiffs and Old Republic stipulated to the dismissal of Old
26 Republic from the complaint, and all claims against Old Republic were dismissed on January
27 10, 2012. (Doc. 50).

28

The claims to be discussed in this order are as follows: 1) Breach of Contract, against all Defendants, for failing to abide by the terms of the Note in the subsequent transfers and foreclosure proceedings, 2) Quiet Title, against all Defendants, for conducting a foreclosure without authority to do so, 3) Breach of the Duty of Good Faith and Fair Dealing against all Defendants, 4) Negligent Performance of an Undertaking against HomEq and Ocwen, 5) Fraudulent Concealment against Wells Fargo, HomEq, and Ocwen, 6) Fraud against Wells Fargo, HomEq, and Ocwen, 7) Consumer Fraud against all Defendants, and 8) Negligence per se against Wells Fargo and HomEq. (Doc. 36). Defendants have moved to dismiss the complaint.

**DISCUSSION**

**I.     Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the

1 nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Analysis

As a preliminary matter, Defendants argue that Plaintiffs' claims must fail because Plaintiffs did not obtain an injunction prior to the foreclosure sale, as required by Arizona Revised Statutes ("A.R.S.") § 33-811 (2006). Plaintiffs have claimed that they were not notified of the sale after Ocwen took over servicing the loan from HomEq. Other courts have noted that § 33-811 is subject to equitable exceptions, including for cases in which notice of the sale was not given or the sale was void. *See Martenson v. RG Financing*, 2010 WL 334648, at *9 (D. Ariz. Jan. 22, 2010) ("Defendants would thus pack into the 2002 amendment of subsection (C) an implicit repeal of other express provisions of the statutory scheme and of the essential structure of the deed of trust system since its enactment three decades before."). As this Court noted in its initial order, "in light of the facts pleaded in the Complaint, the Court cannot say at this stage of the litigation that no equitable exception to the application of A.R.S. § 33-811 would apply." (Doc. 33 at 9). Under the facts alleged, Plaintiffs' claims are not barred by § 33-811.

Likewise, Defendants contend the Court did not grant Plaintiffs leave to amend to include a claim for breach of contract or a claim for negligence per se. (Doc. 38 at 4). In the order denying the initial motion to dismiss, the Court noted, when writing about the "show me the note" theory, that Plaintiffs would not be "authorized to reassert the inadequate legal theories discussed above" in their amended complaint. (Doc. 33 at 9). The order did not otherwise place limits on how Plaintiffs framed their causes of action, and Plaintiffs' amended complaint is based on the same core factual allegations as the original complaint. Plaintiffs' amended complaint will be considered on the merits.

### A. Breach of Contract

- 6 -

1    As discussed in the earlier order, the courts of this district have routinely rejected the
2  "show me the note" argument—a claim, for example, that a foreclosure is invalid because
3  a promissory note and a deed of trust name different beneficiaries, or that foreclosures on a
4  deed of trust are subject to legal protections applying to actions on negotiable instruments.
5  *See Diessner v. Mortgage Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1187 (D. Ariz.
6  2009) ("[D]istrict courts have routinely held that Plaintiff's 'show me the note' argument
7  lacks merit."). Moreover, the Ninth Circuit has rejected any argument that MERS, or another
8  trustee named as a beneficiary, lacks the power to transfer its rights under a deed of trust. *See*
9  *Cervantes et al. v. Countrywide et al.*, 656 F.3d 1034, 1044 (9th Cir. 2011) ("[T]he notes and
10 deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS
11 or the trustee, as nominal holders of the deeds, are not agents of the lenders.").

12    Plaintiffs have refashioned much of their original "show me the note" argument into
13 a breach of contract claim. (Doc. 36 ¶¶ 106–135). First, they claim that the parties
14 securitizing the mortgage did not abide by the terms of the PSA, rendering the transactions
15 void. (Doc. 36 ¶ 119). Next, they claim that because the Note defines the "Note Holder" as
16 the lender or someone "who takes this Note by transfer and who is entitled to receive
17 payments," and because the holders of the issued security were the only ones entitled to the
18 payments, that no Defendant was the "Note Holder" under the terms of the Note, and thus
19 none could demand an accelerated payment or initiate foreclosure proceedings. (Doc. 36-1,
20 Ex. A). Finally, they claim that the signatures in the Assignment of Trustee and the Notice
21 of Sale were not authenticated and improperly notarized, and thus constitute breaches of the
22 contracts created by the DOT in conjunction with the Arizona statutes. (Doc. 36 ¶¶ 106–135).

23    No claim based on a violation of the PSA can survive. Plaintiffs were not a party to
24 the PSA, and make no argument to suggest that they have standing to challenge transactions
25 between financial institutions based upon the fact that the strict terms of the PSA were not
26 followed. *See Anderson v. Countrywide Home Loans*, No. 10–2685 (MJD/JJG), 2011 WL
27 1627945, at *2 (D. Minn. Apr. 2, 2011) (rejecting breach of contract argument relying on

pooling and servicing agreement because the "only contracts between Plaintiffs and Defendants are the note and mortgage").

The Note states that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Doc. 36-1, Ex. A). Plaintiffs contend that no Defendant was the "Note Holder" because after the Note was securitized, "the Certificateholders [were] the only ones entitled to payment." (Doc. 36, ¶ 37). Plaintiffs nowhere claim that they were paying the Certificateholders directly. Rather, they state that they continued to pay HomEq, which they acknowledge is a subsidiary of Barclays Capital Real Estate, Inc., which itself is in privity with the underwriter of the certificates, Barclays Capital, Inc. (Doc. 36 ¶¶ 39, 6). If Plaintiffs were sending their payments to Barclays, which was then paying the Certificateholders, then Barclays was "entitled to payment" even if it, through the trust, forwarded that payment to others. Plaintiffs' argument that no Defendant was the "Note Holder" fails.

Plaintiffs finally allege irregularities regarding the transfers of interest that render those transfers invalid under the Deed of Trust statutes. (Doc. 36 ¶¶ 118–35). Similar claims in the original complaint were dismissed under *Iqbal*'s plausibility standard. (Doc. 33 at 5–6). In their amended complaint, however, Plaintiffs offer substantially more detail in support of this claim than they did originally. They note that the person who signed the Assignment, for example, lives and works in Jacksonville, Florida, but that the Assignment was notarized in Sacramento County, California.[3] They note that HomEq signed the Substitution as attorney in fact for Wells Fargo but had no power to act as such.

Foreclosures in Arizona are governed by the non-judicial deed of trust statutes, Arizona Revised Statutes ("A.R.S.") § 33-801–21 (2006). Plaintiffs correctly note that

---

[3] Plaintiffs also allege that because the signer was a bank employee, she could not have signed as an officer for MERS. Plaintiffs misunderstand how MERS operates. *See Cervantes*, 656 F.3d at 1040 ("MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS.").

because these statutes "strip borrowers of many of the protections available under a mortgage," lenders "must strictly comply with" them and they "must be strictly construed in favor of the borrower." *Patton v. First Federal Sav. and Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978). Allegations that the Deed of Trust statutes were violated, including an allegation that a "notary falsely certified [that] the signatory appeared before her in California," are sufficient to state a claim that the trustee's sale was void. *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1066 (D. Ariz. 2011). Plaintiffs' breach of contract claim survives with regard to the allegations that by violating the Deed of Trust statutes, Defendants violated the terms of the DOT itself.

### B. Quiet Title

Plaintiffs' original quiet title claim was dismissed as to all parties except Wells Fargo. (Doc. 33 at 9). They now claim that the irregularities in the foreclosure paperwork render the transfers and the trustee's sale void, allowing them to state a quiet title claim against other parties as well. Plaintiffs can only bring a quiet title claim against a person or entity which "claims an estate or interest in real property which is adverse to the party bringing the action." A.R.S. § 12-1101 (2007). Only Wells Fargo currently claims an interest in the property, and so the quiet title claim is again dismissed against all other Defendants. As noted above, Plaintiffs have not stated a claim that the transfers were invalid based upon an argument that no party was the "Note Holder," but have stated a claim that the sale was void because the failure to provide notice and the improper authentication of documents violated the Deed of Trust statutes. Defendants argue that Plaintiffs cannot state a claim to quiet title without paying off the debt they owe. However, "[t]he tender rule does not apply to a void, as opposed to a voidable, foreclosure sale." *Martinez v. America's Wholesale Lender*, 446 Fed. App'x 940, 943 (9th Cir. 2011). Plaintiffs' quiet title claim may proceed against Wells Fargo.

### C. Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs' original claim for breach of the duty of good faith and fair dealing was

- 9 -

allowed to proceed with respect to Wells Fargo and Ocwen, and was dismissed with regards to HomEq and MERS. Allegations that these Defendants increased the September payment by one penny without notifying Plaintiffs, held the payment that was sent for the original price without notifying Plaintiffs that it was inadequate, conducted a foreclosure without notice and based upon an Assignment that was invalid, and gave notice that the September payment was inadequate only after the foreclosure took place, together state a claim that Wells Fargo and Ocwen breached the duty of good faith and fair dealing.

In the Amended Complaint, Plaintiffs again "make no allegation that MERS had any role in processing their payments, loan modification requests, or in making the decision to proceed with the non-judicial foreclosure." (Doc. 33 at 10). They claim only that MERS allowed an employee of Old Republic to sign as an officer for MERS; as noted above, MERS officers are regularly employees of other entities. *See Cervantes*, 656 F.3d at 1040.

As noted in the initial order, Plaintiffs do not allege that HomEq foreclosed on their home—in fact, "HomEq was replaced by Ocwen one month prior to the expiration of the last Listing Foreclosure Agreement and two months prior to foreclosure." (Doc. 33 at 10). Plaintiffs initially alleged that HomEq would not offer a modification when they were not in default; they have now added that HomEq encouraged them to default, only to deny their loan modification applications later. (Doc. 36 ¶¶ 38–39). Nevertheless, Plaintiffs plead no facts "from which it could be concluded that HomEq was involved in the decision to conduct the foreclosure or conducted the foreclosure." (Doc. 33 at 10).

Plaintiffs' claims that HomEq and MERS breached their duty of good faith are dismissed. The claims against Wells Fargo and Ocwen may proceed.

**D. Negligent Performance of an Undertaking (Good Samaritan Rule)**

Parties disagree as to whether Arizona law permits recovery under the Good Samaritan doctrine absent physical injury to the Plaintiff. As articulated in the Restatement of Torts, the Good Samaritan doctrine permits recovery of those who render services for "physical harm resulting from [defendant's] failure to exercise reasonable care to perform

- 10 -

his undertaking." RESTATEMENT (SECOND) OF TORTS § 323 (1965). Although the Restatement specifies that only physical harm is actionable under the doctrine, the Arizona Court of Appeals has held that a volunteer "may be liable for economic harm as well as physical harm." *Lloyd v. State Farm Mut. Auto Ins. Co.*, 176 Ariz. 247, 250, 860 P.2d 1300, 1303 (App. 1992) (insurance company that volunteered to defend claim not covered in policy may be liable when it defends claim negligently). Federal Courts in this district considering lending cases have alternately adopted the reasoning of the Arizona Court of Appeals, *see Renteria v. United States*, 452 F. Supp. 2d 910, 914 (D. Ariz. 2006) ("[t]he Good Samaritan Doctrine applies to economic harm"), or denied claims because "[t]he Arizona Supreme Court has not extended this theory beyond its express limitation to physical harm." *Russel v. One West Bank, FSB*, CV-11-01463-PHX-FJM, 2011 WL 5007958, at *3 (D. Ariz. Oct. 20, 2011).

The Court of Appeals itself relied upon a case decided by the Arizona Supreme Court in 1985, in which a judge wrote an order of release and handed it to a sheriff's deputy with the verbal instruction not to file it until the defendant had posted bail. *McCutchen v. Hill*, 147 Ariz. 401, 710 P.2d 1056 (1985). The deputy turned in the order before the bail was posted, and the defendant, who was being held for non-payment of child support, never returned. The Arizona Supreme Court quoted the Restatement's definition of the Good Samaritan rule in its entirety, and then held that under it, the deputy could be liable to the mother who never received child support payments from the defendant. *McCutchen*, 147 Ariz. at 404 ("The deputy's personal agreement to hold the release order until the money was paid gave rise to 'the duty to use proper care in the performance of the task' assumed" (citing W. Prosser and W. Keeton, Law of Torts § 56 at 379–80 (5th ed. 1984)). The Arizona Supreme Court has therefore held that in Arizona, a claim for negligent performance of an undertaking may be stated for purely economic harm.

Defendants do not argue in their motion that the Good Samaritan claim should be

1  dismissed for any other reason than that such a claim is not cognizable for economic loss.[4]
2  Plaintiffs' Good Samaritan claim may proceed.

### E. Fraud Claims

In the original complaint, fraud claims against HomEq and MERS were dismissed, while fraud claims against Wells Fargo and Ocwen survived. (Doc. 33). Plaintiffs claim that Wells Fargo, HomEq, and Ocwen are liable for fraudulent concealment, that Wells Fargo, HomEq, and Ocwen are liable for fraud, and that all Defendants are liable for consumer fraud. In a fraud claim, a Plaintiff must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In Arizona, the elements of fraud are "(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Nielson v. Flashberg*, 101 Ariz. 335, 339, 419 P.2d 514, 518 (1966). These elements must be pled with particularity for each claim and for each Defendant. The Defendants will be discussed in turn.

Plaintiffs claim that MERS is liable only for consumer fraud. They allege that MERS submitted the Assignment to the Navajo County recorder even though it had not been properly notarized and was therefore invalid. Plaintiffs do not state with particularity how they relied on the Assignment. They acknowledge that they knowingly went into default, and they continued to negotiate with their loan servicer for a modification. They do not allege that they would have done anything differently had they believed that MERS, rather than Wells Fargo, had still been the trustee under the DOT. The fraud claim against MERS is

---

[4] In their reply, Defendants argue additionally that "Defendants owe no negligence duty to Plaintiffs as a matter of law." (Doc. 38 at 9). The Court need not consider this argument. *United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir.2008) ( "[A]rguments raised for the first time in a reply brief are generally considered waived.").

1  dismissed.

2　　　　Plaintiffs allege that HomEq falsely told them that they could not receive a loan
3  modification unless they were in default. Plaintiffs allege that HomEq encouraged Plaintiffs
4  to default on their loan as part of a plan whereby they "would lure Plaintiffs into default and
5  engage in dilatory tactics . . . [because] the Defendants intended to foreclose." (Doc. 36 ¶
6  195(g)). They allege that they relied on the statement that a modification was only possible
7  if they were in default by going into default, and that HomEq knew that the statements were
8  false and made them in order to foreclose on the property. They do not, however, allege that
9  HomEq's false statements led to Plaintiffs' proximate injury. After HomEq initiated the 2009
10 foreclosure proceedings, it offered two Listing Foreclosure Agreements that delayed the sale.
11 It took no part in the 2010 trustee's sale that damaged Plaintiffs. (Doc. 36 ¶ 69). The fraud
12 claims against HomEq are dismissed.

13　　　　Plaintiffs allege that an Ocwen representative told Plaintiffs, after their September
14 payment had been mailed, that Ocwen did not want the property and would work with
15 Plaintiffs to allow them to keep the property. (Doc. 36 ¶ 75). Plaintiffs allege that they relied
16 on this statement when they submitted further paperwork seeking a modification, and that
17 if Ocwen had instead stated that the September payment had not been accepted and a
18 trustee's sale was scheduled, that they would have taken steps to stop the foreclosure. (Doc.
19 36 ¶ 75). Instead, Ocwen foreclosed on their property, damaging them. (Doc. 36 ¶ 76). The
20 fraud claims against Ocwen survive.

21　　　　Plaintiffs' fraud claim against Wells Fargo also relates to the Assignment. As noted
22 above, however, they do not state what reliance they placed on the Assignment itself. They
23 do not claim they would have behaved differently had they believed that MERS, rather than
24 Wells Fargo, was the trustee under the Deed of Trust. They also claim that Wells Fargo
25 engaged in fraud by issuing the trustee's deed, but do not state how they relied on this
26 representation to their detriment, since it was issued after the foreclosure sale had taken
27 place. The fraud claims against Wells Fargo are dismissed.

28

### F. Negligence Per Se

Plaintiffs allege that by submitting documents that they knew to be falsely notarized to the Navajo county recorder, Defendants violated A.R.S. § 39-161, which reads:

> A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony.

Plaintiffs allege that the law was enacted to protect property owners, and that they were damaged by the violation since without the violation the foreclosure would not have taken place. *See Orlando v. Northcutt*, 103 Ariz. 298, 300, 441 P.2d 58, 60 ("Violations of a statute created to protect a certain group is negligence per se."). Defendants claim that Plaintiffs do not allege that Defendants knew the documents were falsely authenticated, but in the body of the amended complaint Plaintiffs allege that employees of Defendants signed documents in Florida and sent them to California to be notarized, which demonstrates that they knew the notaries did not personally witness the signatures. (Doc. 36 ¶¶ 45–46, 51–52, 89–92). As noted above, the claims of false notarization of documents, while conclusory when stated as they were in the original complaint, are stated in a manner to be rendered plausible in the amended complaint.

Plaintiffs also claim that Defendants violated A.R.S. §§ 41-312 and 41-313. These provisions apply to notaries. Plaintiffs do not allege in their complaint that Defendants employed notaries who violated these statutes, but instead that they are liable for "allowing documents to be notarized by notaries who did not witness the signature, or confirm authority" of the documents. (Doc. 36 ¶ 47). Those who allow notaries to violate these laws do not themselves violate them. Defendants do not address the claim that they filed false liens, as prohibited by A.R.S. § 33-420, and the negligence per se claim pertaining to this alleged violation survives.

- 14 -

**CONCLUSION**

Plaintiffs state no claim for breach of contract based on breaches of the PSA, to which they were not parties. They state no breach of contract claim based on allegations that only the certificate holders were "entitled to payment" under the terms of the note, because the entity they were in fact paying was entitled to payment, even if it was obligated to render that payment to the certificate holders. Their quiet title claim survives only against Wells Fargo. Their breach of duty of good faith and fair dealings claims are dismissed against HomeEq and MERS, who were not involved with the foreclosure, but survive against Wells Fargo and Ocwen. Their Good Samaritan doctrine claims against HomeEq and Ocwen survive, since these claims may be brought for purely financial damages in Arizona. Their fraud claims survive only against Ocwen, and their negligence per se claims survive only with regard to violations of A.R.S. §§ 39-161 and 33-420.

**IT IS THEREFORE ORDERED:**

1. Defendants' **Motion to Dismiss** (Doc. 38) is **granted in part and denied in part.**

2. The remaining claims and Defendants are as follows:

   a. Claim One survives with regards to allegations that MERS, HomEq, and Wells Fargo violated the Deed of Trust statutes, which were part of the DOT contract, in executing the Substitution and the Assignment.

   b. Claim Two survives with regards to Wells Fargo.

   c. Claim Three survives against Wells Fargo and Ocwen.

   d. Claim Four survives against HomEq and Ocwen.

   e. Claims Five, Six, and Seven survive only against Ocwen.

   f. Claim Eight survives with regards to violations of A.R.S. §§ 39-161 and 33-420.

DATED this 4th day of April, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge