**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay Kentera and Julie Kentera, husband and wife,<br><br>        Plaintiffs,<br><br>vs.<br><br>Fremont Investment & Loan, et al.,<br><br>        Defendants. | No. CV-10-8259-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Reconsider this Court's Order granting in part and denying in part Defendants' earlier Motion to Dismiss. (Doc. 56). For the reasons stated below, the motion is denied.[1]

## BACKGROUND

The facts of this case are set forth in the Court's previous order and will only be recounted briefly. (Doc. 54). According to the Complaint, Plaintiffs borrowed $461,000.00 to purchase a property at 3280 Blazing Star Road in Show Low, Arizona, on January 26, 2006 ("the property"). Plaintiffs contacted HomEq, which was servicing the loan, asking for

---

[1] Defendants have asked for oral argument. The request is denied because oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

a loan modification in 2009. HomEq told Plaintiffs that since the loan was not in default, it would not modify the loan, and encouraged Plaintiffs to go into default so that they could receive a modification. HomEq then supplied Plaintiffs with applications for a modification program for which they were not eligible, and promptly assigned its interest first to Wells Fargo and then to Old Republic Default Management Services ("Old Republic"), which noticed a trustee sale. HomEq continued to service the loan, and agreed to a Listing Forbearance Agreement ("LFA") on November 5, 2009, and then another in March of 2010. Plaintiffs continued to make payments on the loan while the LFAs were in effect.

On August 11, 2010, Plaintiffs were informed that the servicing of the loan would be transferred from HomEq to Ocwen. Plaintiffs continued to make their payments, but unbeknownst to them, Ocwen had increased the monthly payment amount by one penny. Rather than notify Plaintiffs that their payment was one penny short, Ocwen categorized the payment as insufficient and resumed the foreclosure proceedings that had been noticed nearly two years before, and which had been in abeyance under the LFAs. According to the complaint, Plaintiffs did not learn that Ocwen had rejected the payment until they were on the phone with an Ocwen representative who informed them that the property had been foreclosed the day before. Other than the original 2009 notice, Plaintiffs had received no notice that a foreclosure was imminent. Moreover, Ocwen had never notified Plaintiffs that it had changed the payment amount by one penny, rendering the regular payment that Plaintiffs made in September of 2010 insufficient, or that it had rejected a payment that Plaintiffs had made.

Plaintiffs filed suit in 2010 and filed an Amended Complaint in this Court in October of 2011. This court dismissed a number of claims on April 4, 2012, including claims alleging that the parties failed to abide by the terms of the note, that parties other than Ocwen engaged in fraud, and that parties other than Wells Fargo and Ocwen breached the Duty of Good Faith and Fair Dealing. (Doc. 54).

A number of claims survived, including a claim that the various Defendants did not comply with Arizona's Deed of Trust statutes when transferring interests in the loan prior to

1 foreclosure. This claim was supported by documentation that persons who purported to
2 notarize the documents did so in different states than the person who allegedly signed the
3 documents. Plaintiffs presented this evidence in support of the allegation that the assignments
4 were not made in compliance with Arizona law, because "[a]lthough the documents are
5 crafted to look as though they were prepared by different entities at different times, on
6 information and belief all foreclosure documents were prepared by a foreclosure mill and
7 signed and dated at about ths same time." (Doc. 36 ¶ 51). A quiet title claim against Wells
8 Fargo also survived dismissal, along with a Good Samaritan claim against HomEq and
9 Ocwen, a number of fraud claims against Ocwen, and negligence per se claims. (Doc. 54).

10 Defendants have filed a Motion for Reconsideration, noting that a sister court in this
11 district has recently dismissed a claim that also alleged that Deed of Trust documents had
12 been falsely notarized. *See Silving v. Wells Fargo Bank, NA*, CV-11-0676 (DGC), 2012 WL
13 135989 (Jan. 18, 2012). Defendants state that because "[t]he *Silving* decision is new law
14 addressing nearly identical claims, which dismissed each of Plaintiffs' claims with
15 prejudice," this Court should reconsider its earlier order and dismiss Plaintiffs' complaint
16 with prejudice. (Doc. 56 at 9).

**DISCUSSION**

18 **I.    Legal Standard**.

19 "Motions for reconsideration 'are disfavored and will be granted only upon a showing
20 of manifest error or new facts or legal authority that could not have been raised earlier with
21 reasonable diligence.'" *Silving v. Wells Fargo Bank, NA*, CV-11-0676 (DGC), 2012 WL
22 780866, at *1 (Mar. 9, 2012) (quoting *In re Rosson*, 545 F.3d 764, 769 (9th Cir. 2008)). It
23 is not appropriate to make new arguments not raised in original briefs in a motion for
24 reconsideration. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918,
25 925–26 (9th Cir. 1988). Finally, parties should not use such motions to ask the Court to
26 "rethink what the court has already thought through—rightly or wrongly." *United States v.*
27 *Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (quoting *Above the Belt, Inc. v. Mel*
28 *Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

- 3 -

**II.     Analysis**

Defendants do not meet the standard for a motion for reconsideration. A decision by another district court is not binding on this court and therefore does not constitute "an intervening change in controlling law" sufficient to merit reconsideration. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). Moreover, although the *Silving* decision was issued after the motion to dismiss had been fully briefed, Defendants had nearly three months after that order was issued to notify this Court of the ruling. Even were *Silving* directly on point to all of Plaintiffs' claims, Defendants have only asked the court to "rethink what the court has already thought through" in light of non-binding authority that. *Rezzonico*, 32 F. Supp. 2d at 1116.

More importantly, much of *Silving* is not in fact on point. Nowhere does the *Silving* court address fraud claims analogous to those pled here, in which a loan servicer is alleged to have changed the payment due on a mortgage by one penny, classified a payment as deficient without notifying the payor, and foreclosed upon the property without providing notice that the payment was insufficient.

At its core, Defendants' motion takes issue with this Court's ruling that Plaintiffs stated claims for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing by alleging that loan documentation had been falsely notarized in a "foreclosure mill" by people without authority to sign the documents and who subsequently did not appear before the notaries and "acknowledge[] that [they] executed the instrument" as required by A.R.S. § 33-503. (Doc. 56). Defendants note that the *Silving* court dismissed a similar complaint because "the signor need not appear before the notary" when the notary has "satisfactory evidence that the person had executed the instrument." *Silving*, 2012 WL 135989, at *4. Defendants are correct to state that if the Florida signatories appeared subsequently before the notaries in California, or otherwise provided "satisfactory evidence" that they had in fact executed the instruments, the instruments would be valid. *Id.*

This Court cannot speak to what particular facts were plead in *Silving*, but notes that in this case, Plaintiffs did not allege that the assignments were invalid solely because they

- 4 -

1  were signed in Florida and subsequently notarized in California. Instead, the information
2  regarding the distance between alleged signatories and alleged notaries was offered in
3  support of the contention that "the documents are crafted to look as though they were
4  prepared by different entities at different times," even though in fact "all foreclosure
5  documents were prepared by a foreclosure mill and signed and dated on or about the same
6  time." (Doc. 36 at 32). As the Court noted in its previous order, the documentation regarding
7  the whereabouts of the alleged signatories rendered this allegation "plausible on its face."
8  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (Doc. 54). Rather than merely alleging that
9  the assignments were invalid because they had been signed in Florida and notarized in
10 California, Plaintiffs argued that the locations of the alleged signatories suggested that the
11 assignments had not been properly authorized at all. At the motion to dismiss stage, Plaintiffs
12 need only contain factual allegations that "raise a right to relief above the speculative level."
13 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' claim that Defendants
14 violated the Deed of Trust statutes, which "must be strictly construed in favor of the
15 borrower," contains such factual allegations here. *Patton v. First Federal Sav. and Loan*
16 *Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978). Likewise, Defendants are incorrect to
17 state that the negligence per se claims are "based entirely on the erroneous theory that a
18 notary must personally witness the signatures." (Doc. 56 at 8). Defendants are free to argue,
19 at some later stage in this litigation, that the signatures were properly authenticated even
20 though the notaries did not witness them. At the motion to dismiss stage, however, Plaintiffs'
21 claim that they were not authenticated is "plausible on its face." *Iqbal*, 129 S. Ct. at 949.

22 Defendants also claim that the Quiet Title claim against Wells Fargo must be
23 dismissed because Plaintiffs did not list the property as an asset in their bankruptcy
24 proceeding, and that the Good Samaritan claim should be dismissed because Plaintiffs did
25 not allege that Defendants' failure to follow through with the promised loan modification
26 package increased harm to Plaintiffs. (Doc. 56 at 7–8). These are new arguments that
27 Defendants did not bring in their motion to dismiss, and are not appropriate to bring during
28 a motion for reconsideration. In their motion to dismiss, Defendants stated only that

1  "Plaintiffs Claim for Neglient [*sic*] Performance of Undertaking Fails As No Undertaking
2  or Physical Injury Is Alleged." (Doc. 38 at 8). Defendants argued that the Arizona Supreme
3  Court had never held that Good Samaritan claims could proceed absent physical injury. In
4  its original order, the Court noted that in fact the Arizona Supreme Court had held that a
5  claim for negligent performance of an undertaking may be stated for purely economic harm
6  as early as 1985. *See McCutchen v. Hill*, 147 Ariz. 401, 404, 710 P.2d 1056, 1059 (1985).
7  Defendants argue that the *Silving* court found this argument compelling in the *Silving* case,
8  but do not deny that they failed to raise it in their motion to dismiss here. Likewise,
9  Defendants did not mention Plaintiffs' bankruptcy or ask the Court to take judicial notice of
10 the bankruptcy proceeding in their initial motion. A motion for reconsideration is not the
11 proper place to raise a new argument to which an opposing party has not had the opportunity
12 to respond.

## CONCLUSION

14 Defendants ask this Court to reconsider its earlier order because another court in this
15 district recently dismissed what Defendants characterize as a similar case. Although
16 *Silving* was decided after their motion was fully briefed, Defendants had ample time to notify
17 the Court of the decision, and as a district court decision it is not binding in any event.
18 Defendants' motion therefore does not meet the standard necessary for this Court to
19 reconsider its earlier order. In any event, the *Silving* decision did not address fraud
20 allegations analogous to those in this case. Moreover, the allegations, as pled by Plaintiffs
21 here, remain "plausible" even considering the *Silving* decision.
22 / / /
23 / / /
24 **IT IS THEREFORE ORDERED** that Defendants' Motion for Reconsideration
25 (Doc. 56) is **denied**.
26 DATED this 26th day of April, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge